# UNITED STATE DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

Edward E. Kopko, Esq.
Edward E. Kopko, Lawyer, P.C.
Attorney for Plaintiff, Rose DeGroat
308 N Tioga St., 2nd Floor
Ithaca, New York 14850
(607) 269-1300; (607) 269-1301 fax
office@kopko.law

| | |
|---|---|
| ROSE E. DeGROAT,<br><br><div align="right">Plaintiff,</div><br>v.<br><br>BENJAMIN BUCK, ZACHARY DORN,<br>GEORGE DUPAY, and GREGORY<br>HERZ,<br><div align="right">Defendants.</div> | Docket No. <u>3:22-cv-00507-LEK-ML</u><br><br>**JURY TRIAL DEMANDED** |

| **COMPLAINT** |
|---|

Plaintiff, Rose E. DeGroat, by and through her attorney, Edward E. Kopko, Esq.,

asserts a claim against the aforementioned Defendants upon causes of action stated as

follows:

## INTRODUCTION

1. This is a § 1983 action seeking monetary damages and injunctive relief for acts of

   excessive force and failure to intervene the Plaintiff, Rose DeGroat ("DeGroat").

2. On April 6, 2019, Ithaca Police officers responded to an altercation taking place late at

   night in downtown Ithaca, which ended in the arrest of Cadji Ferguson ("Ferguson")

   and DeGroat.

3.  The underlying altercation started when a white male, Joseph Ming ("Ming") made non-consensual sexual advances towards L.S., a friend of Ferguson, an African-American, and DeGroat, despite Ferguson repeatedly telling Ming to stop his actions.

4.  After Ming continued to persist, Ferguson attempted to get Ming away from L.S., acting to protect L.S. from what both L.S., Ferguson, and the rest of the group believed to be a situation of imminent physical danger.

5.  Ming continued to persist, responding hostilely to Ferguson and fighting with him.

6.  Meanwhile, a few hundred feet away, a young woman approached Defendants Buck, Dorn, DuPay, and Herz, who were working within their regular capacities as police officers for the City of Ithaca.  The woman, upon information and belief, alerted the Defendants to the altercation.

7.  Immediately, Defendants Buck, Dorn, DuPay, and Herz ran over to where Ferguson and Ming were standing with their tasers already deployed.

8.  Despite the aggressions of Ming, and despite Ferguson acting to defend L.S., DuPay grabbed Ferguson and swung him to the ground as Defendant Herz tased him. Meanwhile Defendants Buck and Dorn collectively tackled DeGroat.

9.  Both Ferguson and DeGroat were held on the ground for minutes, while no officer even laid a finger on Ming.

10. Both Ferguson and DeGroat were then arrested.  Ferguson was charged with disorderly conduct and DeGroat with assault, despite neither of them conducting

such acts.  They were then prosecuted until the Tompkins County Court granted a motion to dismiss the charges against DeGroat.  Ferguson was acquitted of all charges after a bench trial by Ithaca City Court.

11. Without seeing or knowing the underlying assault by Ming, the defendants assumed that Ferguson, being an African-American, was the instigator, and the defendants assaulted and subdued Ferguson, solely upon their biased, racial-motivated judgment.

12. From the time the Defendants became involved, the events giving way to this Complaint were captured on their body cameras, which were delivered by the prosecutor in connection with discovery underlying Ferguson and DeGroat's former criminal charges, absent footage from Defendant Buck, whose body camera footage from during these incidents, if any, was precluded from discovery.  A copy of Defendant's Dorn, DuPay, and Herz's body camera footage from the incident has been mailed to the Court as "Exhibit 1".

## JURISDISCITON AND VENUE

13. DeGroat's claims against Defendants are predicated 42 U.S.C. § 1983, deprivation of rights claims, all of which occurred in Tompkins County.

## IDENTITY OF THE PARTIES

14. At all times pertinent herein, Plaintiff ROSE DeGROAT, ("DeGroat"), is a citizen of the United States and a resident of the State of New York, County of Tompkins.

15. At all times pertinent herein, Defendant BENJAMIN BUCK, ("Buck"), is a citizen of the United States and a resident of the State of New York, County of Tompkins.

16. At all times pertinent herein, Buck is acting under color of state law in his capacity as a law enforcement officer employed by the Ithaca Police Department.

17. At all times pertinent herein, Buck is acting in the course and general scope of his employment by the Ithaca Police Department, pursuant to the authority given to him by the department and the City of Ithaca and pursuant to its instructions and duty assignments.

18. By virtue of Buck's employment as police officer with the Ithaca Police Department, Buck is a "police officer" as the term is defined in CPL § 1.20(34)(d).

19. As a police officer, Buck, when seizing, arresting, and acting with force against DeGroat, acted under color of law by using the authority vested in him by virtue of his employment with the Ithaca Police Department and by using the arrest procedures, appearance ticket procedures, and preliminarily arraignment procedures set forth in CPL § 150.20, which procedures are only available to police officers.

20. Buck is sued in his individual capacity.

21. At all times pertinent herein, Defendant ZACHARY DORN, ("Dorn"), is a citizen of the United States and a resident of the State of New York, County of Tompkins.

22. At all times pertinent herein, Dorn is acting under color of state law in his capacity as a law enforcement officer employed by the Ithaca Police Department.

23. At all times pertinent herein, Dorn is acting in the course and general scope of his employment by the Ithaca Police Department, pursuant to the authority given to him by the department and the City of Ithaca and pursuant to its instructions and duty assignments.

24. By virtue of Dorn's employment as police officer with the Ithaca Police Department, Buck is a "police officer" as the term is defined in CPL § 1.20(34)(d).

25. As a police officer, Dorn, when seizing, arresting, and acting with force against DeGroat, acted under color of law by using the authority vested in him by virtue of his employment with the Ithaca Police Department and by using the arrest procedures, appearance ticket procedures, and preliminarily arraignment procedures set forth in CPL § 150.20, which procedures are only available to police officers.

26. Dorn is sued in his individual capacity.

27. At all times pertinent herein, Defendant GEORGE DuPAY, ("DuPay"), is a citizen of the United States and a resident of the State of New York, County of Tompkins.

28. At all times pertinent herein, DuPay is acting under color of state law in his capacity as a law enforcement officer employed by the Ithaca Police Department.

29. At all times pertinent herein, DuPay is acting in the course and general scope of his employment by the Ithaca Police Department, pursuant to the authority given to him by the department and the City of Ithaca and pursuant to its instructions and duty assignments.

30. By virtue of DuPay's employment as police officer with the Ithaca Police Department, Buck is a "police officer" as the term is defined in CPL § 1.20(34)(d).

31. As a police officer, DuPay, when seizing, arresting, and acting with force against DeGroat, acted under color of law by using the authority vested in him by virtue of his employment with the Ithaca Police Department and by using the arrest procedures, appearance ticket procedures, and preliminarily arraignment procedures set forth in CPL § 150.20, which procedures are only available to police officers.

32. DuPay is sued in his individual capacity.

33. At all times pertinent herein, Defendant GREGORY HERZ, ("Herz"), is a citizen of the United States and a resident of the State of New York, County of Tompkins.

34. At all times pertinent herein, Herz is acting under color of state law in his capacity as a law enforcement officer employed by the Ithaca Police Department.

35. At all times pertinent herein, Herz is acting in the course and general scope of his employment by the Ithaca Police Department, pursuant to the authority given to him by the department and the City of Ithaca and pursuant to its instructions and duty assignments.

36. By virtue of Herz's employment as police officer with the Ithaca Police Department, Buck is a "police officer" as the term is defined in CPL § 1.20(34)(d).

37. As a police officer, Herz, when seizing, arresting, and acting with force against DeGroat, acted under color of law by using the authority vested in him by virtue of his employment with the Ithaca Police Department and by using the arrest procedures, appearance ticket procedures, and preliminarily arraignment procedures set forth in CPL § 150.20, which procedures are only available to police officers.

38. Herz is sued in his individual capacity.

## FACTS COMMON TO ALL CLAIMS

### Ferguson attempts to stop a sexual predator

39. On the morning of April 6, 2019, on or around 1:10 am, DeGroat left Casablanca Pizza, a pizza shop located in the "Commons" in downtown Ithaca, with her friends "R.J.", "L.S.", "K.W." and "D.S.", the brother of Ferguson.

40. The "Commons" is a four-block pedestrian mall and shopping area in downtown Ithaca, with many owned and operated shops, restaurants, and other businesses.

41. The group planned to meet Ferguson just outside of Casablanca Pizza.

42. As Ferguson was approaching the group, he saw a stranger who he would later learn to be named Joseph Ming ("Ming") eyeing the group in a manner that Ferguson perceived to be "suspicious." Ferguson, however, did not take any action towards this individual.

43. Ferguson, DeGroat, D.S., R.J., L.S., and K.W. started to walk eastward down the commons.

44. Ming followed the group, walking very close to them.

45. Ming proceeded to walk directly behind L.S., pressing his pelvis into L.S.'s backside. Ming's actions made the group, and especially L.S., very uncomfortable.

46. L.S. gave no consent to Ming for Ming to press his pelvis into her backside.

47. Ferguson asked his group of friends if anyone knows Ming, to which everyone in the group, feeling uncomfortable by Ming's presence, said no.

48. Ferguson then asked Ming if he knows anyone in Ferguson's group, informing Ming that his predatory actions were unwelcome and non-consensual.

49. Ming, disregarding Ferguson's question, said "I'm just here… it's cool," or something to a similar effect.

50. At this point, Ferguson told Ming that he was not welcome, and especially not welcome to press his pelvis into L.S.'s backside.

51. At this point Ming swung his fist at Ferguson.

52. Ferguson, determining that Ming has turned violent after his perceived sexual advances towards L.S., pushed Ming back.

53. Meanwhile, DeGroat is standing out of the way protesting the abhorrent and predatory nature of Ming.

54. Ming then grabbed Ferguson by the jacket, as Ferguson attempted to take it off, then proceeded to swing Ferguson by his jacket.

55. After a few seconds of struggle, Ferguson got his jacket fully off and punched Ming in the face.  Ming went down to the ground.

56. Ming stayed on the ground for a few seconds, before getting back up.

57. The following events are recorded on police body camera footage, which was delivered by the prosecutor in connection with discovery for both DeGroat and Ferguson's criminal case.

58. The body camera footage of Defendant Dorn is stored on a flash drive, "Exhibit 1," titled "AXON_Body_2_Video_2019-04-06_0118_x81344880_(DORN)."

59. The body camera footage of Defendant DuPay is stored on a flash drive, "Exhibit 1," titled "AXON_Body_2_Video_2019-04-06_0118_x8134480_(DuPAY)."

60. The body camera footage of Defendant Herz is stored on a flash drive, "Exhibit 1," titled "AXON_Body_2_Video_2019-04-06_0118_x81169265_(HERZ)."

61. Upon information and belief, Defendant Buck did not have his body camera on during the following events.

62. Alternatively, if Defendant Buck did have his body camera on during the following events, the video was not provided in the prosecutor's discovery in connection with Ferguson and DeGroat's underlying criminal action.

**AXON Body Camera Footage – DeGroat Gets Assaulted for Protesting Ferguson Getting Assaulted for Attempting to Stop a Sexual Predator**

63. Defendants Buck, Dorn, Dupay, and Herz stand at a location on the westward side of the Commons, when a young woman approaches them during a period of time, upon information and belief, moments before the events contained in this Complaint. (Ex. 1 Dorn, 0:16; (b) DuPay, 0:00; (c) Herz 0:18).

64. After conversing with the young woman, Buck, Dorn, DuPay, and Herz collectively take off running towards Ferguson.  (Ex. 1 Dorn, 0:28-0:37; DuPay, 0:00-0:10; Herz 0:18-0:28).

65. While Herz runs, he grabs hold of his taser and continues to run holding it.  Before he approaches Ferguson, who is wearing a red long-sleeve shirt and brown pants, Herz yells "get on the ground" four times, pointing the taser directly at Ferguson.  (Ex. 1 Herz 0:35-0:40).



66. Herz proceeds to approach Ferguson from the back.

67. Meanwhile, DuPay approaches Ferguson and immediately grabs onto his right arm with both of his hands twirling him a full 360 degrees, as Ferguson attempts to move away from Herz' taser which is pointed directly at him.  (Ex. 1, DuPay, 0:18-0:24).



68. As DuPay twirls Ferguson, Herz trips and falls to the ground.

69. The body camera footage of Dorn clearly shows Herz tripping over the legs of DuPay

as he grabs Ferguson.  (Ex. 1, Dorn, 0:38).



70. Upon getting back up, Herz immediately deploys his taser right into Ferguson's back.

(Ex. 1, Herz, 0:43-0:44).



71. DeGroat stands next to Ferguson protesting Ferguson being assaulted and twirled by officer DuPay and tased in the back by officer Herz.

72. Simultaneously, as DuPay swings Ferguson and as he is tased by Herz, Ferguson is smashed to the ground, which he hit with the left side of his face. (Ex. 1 Dorn, 0:44-0:45, DuPay, 0:24-0:25).

73. DeGroat attempts to assist Ferguson because of the illegal arrest and tries to pull DuPay off of Ferguson believing that his arrest is unlawful, as Ferguson was only involved in the underlying altercation in self-defense against Ming's actions to L.S.

74. Buck pulls DeGroat away from DuPay and Ferguson and slams DeGroat to the ground. (Ex. 1, Dorn, 0:47-0:49).



75. DeGroat is justified in believing her assault and Ferguson's assault is unlawful and in reaction to Ferguson being tased and tackled to the ground.  (Ex. 1, Dorn, 0:50).

76. Buck wrestles with DeGroat, bending her background over a flowerbed in attempt to pull her back to the ground.

77. Herz then deploys his taser into DeGroat's left side in her rib-cage area.  (Ex. 1, Dorn, 1:00-1:05)



78. Upon information and belief, immediately after being tased, DeGroat is then tackled back to the ground by Buck and Dorn.  At this time, however, upon further information and belief, Dorn's body camera falls off and does not record the next thirty-nine seconds of the altercation.  (Ex. 1, Dorn, 1:08-1:47).

79. Meanwhile Herz continues stands over Ferguson pointing his taser at him (Ex. 1, Herz, 0:51-0:53).

80. DuPay then holds Ferguson on the ground, twisting Ferguson's arm with his right hand, as shown below.  (Ex. 1, DuPay, 0:27-0:32).



81. Next, DuPay turns Ferguson over onto his stomach, as DeGroat is held on the ground

    by Buck and Dorn (Ex. 1, DuPay 0:33).



82. DuPay then points his taser at the group of bystanders, who are standing about 12-15

    feet away and are protesting the apparent arrest of both DeGroat and Ferguson,

    yelling at them repeatedly to "Get back!  Get back now!".  (Ex. 1, DuPay, 0:35-0:48).



83. Upon information and belief, the group of bystanders, which included D.S., R.J., L.S., and K.W., amongst others, were frightened by having the taser pointed at them while they stood protesting.

84. DuPay then kneels next to Ferguson, who remains still and calm.

85. Meanwhile, DeGroat is screaming and crying, as she justifiably resists the illegal arrest.

86. Herz then proceeds to make his way over to assist Buck and Dorn with DeGroat as DuPay places Ferguson into handcuffs.  (Ex. 1 DuPay 0:54-1:11; Herz, 0:54-0:58).

87. Upon reaching DeGroat, Herz kneels down and with the accompaniment of either Dorn, whose camera is covered during this time, or Buck, who has no footage, further points his taser at the group of bystanders, continually yelling "Get back!  Get back now!" despite the bystanders standing feet away and evidently not interfering with any of the Defendant's work.  (Ex. 1, Herz, 1:02-1:06).



88. At this time, Herz's body camera becomes covered by his jacket for the next thirty-six seconds, as Buck and Dorn continue to wrestle with DeGroat and, upon information and belief, place her into handcuffs during this time.  (Ex. 1, Herz, 1:08-1:42).

89. DeGroat is screaming and crying, as Herz continues to yell at the bystanders to "get back!".  (Ex. 1, Herz, 1:08-1:42).

90. Both Dorn's and Herz's body camera recording resumes, as Herz points his taser, again, at the group of bystanders, while Buck presses his left hand down on DeGroat's back.  (Ex. 1, Dorn, 1:45-1:50; Ex. 1, Herz, 1:43-1:52).



91. Then, Herz's body camera goes back to being covered up for the next two minutes.  (Ex. 1, Herz, 1:54-3:56).

92. Meanwhile, DuPay takes a knee on Ferguson's back, despite Ferguson being in handcuffs.  (Ex. 1, Dorn, 1:47).



93. From the body camera footage of Dorn, DuPay keels on Ferguson's back for a period of time not less than one minute and eight seconds.  (Ex. 1, Dorn, 1:47-2:55).

94. As Buck and Herz continue to struggle with DeGroat and DuPay keels either on or next to Ferguson, additional officers arrive at the scene directing the bystanders back while Dorn walks around aimlessly.  (Ex. 1, Dorn, 2:04-3:14).

95. Buck directs DeGroat up to a sitting position and, upon information and belief, hurts DeGroat.  Ferguson, taking his left cheek of the ground responds: "Rosie, Rosie, calm down.  Rosie, calm down.  Rosie, calm down.  Calm down, Rosie, it's alright.  Rosie, calm down," before placing his left cheek back on the ground.  (Ex. 1, DuPay, 2:40-2:52).

96. Crying, DeGroat responds, "okay".  (Ex. 1, DuPay, 2:52).

97. Ferguson then says to DuPay, "You guys don't even know what happened!"  (Ex. 1, DuPay, 2:54-2:55).

98. DuPay replies, "I know, the only thing I saw was you take your jacket off and attack someone." (Ex.1, DuPay, 2:56-2:59).

99. Meanwhile, Buck and Dorn bring DeGroat to her feet.  (Ex. 1, Dorn, 3:16).

100.   Ferguson said, "Okay, well you don't know what happened before that!  He [Ming] tried to assault my friend... he tried to assault my friend!" (Ex. 1, DuPay, 3:00-3:07).

101.   At this point, DuPay brings Ferguson to his feet.  (Ex. 1, DuPay, 3:10).

102.   The Defendants then collectively, with the assistance of other officers, escort Ferguson and DeGroat to the westward side of the commons, both of them to their own respective police cruiser.  (Ex. 1, Dorn, 3:30-4:12; DuPay, 3:10-4:00).

103.   When Ferguson arrives at the police cruiser, located to the right of The Cornell Store in the commons, Ferguson tells DuPay, "He [Ming] tried to attack, he's a male predator.  He... he's thirty-five years old and tried to attack my friend [L.S.] [?]." (Ex. 1, DuPay, 3:59-4:07).

104.   DuPay proceeds to remove the probes from the taser out of Ferguson's back.  (Ex. 1, DuPay, 4:55-5:10).

105.   Ferguson proceeds to tells DuPay "I'm really very upset, because you guys tackled me and tased me, and I was not resisting or nothing.  (Ex. 1, DuPay, 5:33-5:42).

106.   DuPay replies: "Well, I was the first one to grab you ... you started pulling away from me." (Ex. 1, DuPay, 5:42-5:48).

107.    Ferguson replies back: "I moved away because you guys [?] the taser… he [Herz] was pointing the taser at me."  (Ex.1, DuPay, 5:48-5:50).

108.    Ferguson continues: "I would not have done that if there was no reason.  He [Ming] tried to attack my friend (L.S.).  He's [Ming]… look at him.  Turn around and look at him [Ming].  No, mister, mister, turn around and look at him.  He's forty-five years old, he tried to touch a twenty-one-year-old.  He came up and grabbed her (L.S.) basically by the pussy, and I'm like 'Mister, that's not alright,' and he's like 'Get the fuck out my face,' he pushed me.  That's the only reason why I hit that man.  To me that's a predator.  That's a fucking predator."  (Ex. 1, DuPay, 6:01-6:34).

109.    A few moments later, Ming comes from around the corner of The Cornell Store and, upon information and belief, says something to Ferguson.  Ferguson responds yelling at Ming calling him a "predator".  (Ex. 1, DuPay, 6:55-7:10).

110.    Ferguson is then placed into the police cruiser.  (Ex. 1, DuPay, 7:10).

## The Prosecution of DeGroat

111.    DeGroat was arrested and arraigned the next morning, at 9:00 am, on two counts of Attempted Assault-2nd (E felony) and Resisting Arrest (A Misdemeanor).

112.    Ferguson was arrested and issued an appearance ticket for disorderly conduct (violation).

113.    Hours later, a press release was issued regarding the arrest of Ferguson and DeGroat, stating "Officers witnessed a male subject, later identified as Ferguson

Ferguson, run across the commons and strike another male subject in the face, knocking him to the ground.  The officers ran towards the fight and attempted to take Ferguson into custody […]" and that DeGroat was arraigned earlier on resisting arrest for "interfering with the lawful arrest of Ferguson."  (Exhibit 2, Press Release).

114.    In support of their first attempted assault charge against DeGroat, the Ithaca Police Department, within their felony complaint, stated that "[DeGroat] did knowingly and intentionally punch your deponent [DuPay], a uniformed police officer, in the back his head and shoulders, while your deponent and Officer G. Herz, another uniformed police officer, were attempting to effect a lawful arrest on Ferguson Ferguson [DOB omitted].  As a result, your deponent sustained a headache from the defendant's actions."  (Exhibit 3, DeGroat Felony Complaint, signed by DuPay).

115.    DuPay's statements, however, are contradicted by the body camera footage, which shows DeGroat attempting to pull DuPay off Ferguson during what DeGroat perceived to be an unlawful arrest, which was made difficult by DuPay swinging Ferguson around 360 degrees.

116.    In support of their second attempted assault charge against DeGroat, the Ithaca Police Department, within their felony complaint, stated that "Your deponent [Buck] then attempted to place the defendant under arrest and she attempted to punch your deponent before the defendant dug her fingernails into the left side of your deponents'

face.  As a result, your deponent began to bleed from the scratch the defendant left."

(Exhibit 4, DeGroat Felony Complaint, signed by Buck).

117.     The IPD and the prosecutor included within their discovery, multiple photographs

of Buck's left check with a scratch on it.  (Exhibit 5, Photographs of Buck).

118.     Buck's statements, however, are contradicted by police body camera footage,

which shows DeGroat never attempting to dig her fingernails into the left side of

Buck's face.

119.     Furthermore, Buck's statements are contradicted by multiple views of the left side

of Buck's face, contained on additional police body camera footage just hours after the

arrest of DeGroat.     (Exhibit 1, Body Camera Footage from Inside Station,

Axon_Body_2_Video_2019-04-06_0140_x81156157, 0:13-0:14; 0:17-0:24).



120.     On April 17, 2019, a Tompkins County Assistant District Attorney sent a letter to

Ithaca City Court Judge Scott Miller stating that the District Attorney's office

preferred not to prosecute her case at the felony level, and requested an Order

Reducing Charges to Obstructing Governmental Administration in the Second
Degree, which was later signed by Judge Miller.  (Exhibit 6, Letter Order Reducing
Charges).

121.    However, a month later, the District Attorney's office reversed course and sent a
Grand Jury Notice to DeGroat DeGroat's Attorney after, upon information and belief,
speaking to the Defendants about the incident.  (Exhibit 7, Grand Jury Notice, May 16,
2019).

122.    On June 6, 2019, DeGroat was indicted (No. 2019-0042), on one count of
Obstructing Governmental Administration-2nd, two counts of Attempted Assault-2nd,
and Resisting Arrest.  (Exhibit 8, Indictment, June 6, 2019).

123.    Months later, at the end of August 2019, Ferguson had a bench trial over his charge
of disorderly conduct.  The Honorable Scott Miller of Ithaca City Court acquitted
Ferguson of all charges.

124.    The next month, on September 27, 2019, the Honorable Judge Joseph A. Rowley
issued a Decision and Order dismissing all of DeGroat's charges upon a motion for
dismissal in the furtherance of justice.  (Exhibit 9, Decision and Order).  The full
Decision & Order was published in an article by the Ithaca Voice titled "Judge
dismissed charges against Rose DeGroat."  (Exhibit 10, Ithaca Voice Article Per Judge
Rowley's decision, the rationale laid in officers contradictions regarding Cadji.

Rowley's decision, which was published in the Ithaca Voice, an Ithaca Local

Newspaper, states the following:

> "Officer Herz testified before the Grand Jury that he made the decision to use his taser on Mr. Ferguson before he reaches him for two reasons.  First, he said he made eye contact with Mr. Ferguson, a man he described as 'small, younger guy', and concluded that he was about to run from the police.  Second, 'he had already used force against someone else – I had no idea the condition, the guy could have been unconscious for all I knew.' […] "He testified that when he looked up, he saw other officers trying unsuccessfully to physically restrain Mr. Ferguson.  Having a clear line of sight to Mr. Ferguson's back, Officer Herz deployed his taser.  "He went down just as picture perfect as we are trained and I immediately went towards him and tried to help take him into custody."
> (Exhibit 10, emphasis added).

> "The video evidence contradicts parts of Officer Herz's account.  While Mr. Ferguson did push Mr. Ming to the ground, *Mr. Ming stood up within seconds in clear view of the police and well before any of the officers arrived at the scene.*  As the officers approached, Mr. Ming and Mr. Ferguson were essentially squaring off with each other like a couple of boxers.  Neither appeared to have a weapon.  As the police officer arrived, Mr. Ferguson turned away from them and took a couple of steps before he was forcefully grabbed and pushed to the ground by the police.  *There was no time for Mr. Ferguson to hear, understand, or respond to the command that he get on the ground.*  As the two officers sought to physically restrain him, Mr. Ferguson was unarmed and was not fighting with the officers when he was tasered.  He is clearly in a video with one arm free while an officer twisted him around by his other arm. […] Upon careful review of the videotapes, the Court concludes that the Ithaca Police Officers overreacted to the initial situation.  […] The police made no effort to defuse the situation or to simply separate the men while the conflict was sorted out.  They rushed Mr. Ferguson and very aggressively tried to force him to the pavement when he was tasered in the back.  *Officer Hertz was not justified in using a taser on Mr. Ferguson.  His claim that Mr. Ferguson might have knocked Mr. Ming unconscious was clearly not true;* his claim that he could tell Mr. Ferguson was getting ready to run is doubtful; and it is not accurate to characterize Mr. Ferguson's actions as resisting arrest."
> (Exhibit 10, emphasis added).

Lastly, the decision states:

> "Ms. DeGroat witnessed the police charge toward her friend [Cadji], forcibly grab him and *inexplicably* taser him.  She saw him collapse to the ground, unable to move.  As soon as Mr. Ferguson was down, a police officer jumped on top of him.  *In the Court's view, Ms. DeGroat reacted instinctively to protect Mr. Ferguson in this fast moving and bewildering situation.*  If not for the regrettable actions of the police, she likely would not have intervened."
> (Exhibit 10, emphasis added).

125.   While DeGroat was eventually freed from her malicious prosecution in the

furtherance of justice, as of today, she suffers emotional pain and suffering and

apprehension of the police.

<u>COUNT ONE</u>
**ROSE DeGROAT v. BENJAMIN BUCK, ZACHARY DORN, and GREGORY HERZ**
**42 U.S.C. § 1983 – EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AND**
**FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION**

126.   All the allegations of the Complaint are incorporated.

127.   42 U.S.C. § 1983 provides that:

> Every person, who under color of any statute, ordinance, regulation, custom, or usage of any state or territory or the District of Columbia who subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress…

128.   DeGroat is a citizen of the United States and Buck, Dorn, and Herz are each a "person"

and a state actor for the purposes of 42 U.S.C. § 1983.

129.    Buck, Dorn, and Herz, at all times relevant, were acting under the color of state law in their capacity as Ithaca City Police Officers and their acts or omissions constitute conduct within the scope of their official duties or employment.

130.    DeGroat has a clearly established right under the Fourth Amendment to be secure in her person from unreasonably seizure through excessive force.  *Graham v. Connor*, 490 U.S. 386, 397 (1989).

131.    DeGroat also has the clearly established constitutional right under the Fourteenth Amendment to bodily integrity and to be free from excessive force by law enforcement.

132.    Any reasonable police officer knew or should have known of these rights at the time of the complained of conduct as they were clearly established at the time.

133.    A police officer's application of force is excessive in violation of the Fourth Amendment, "if it is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'"  *Graham*, 490 U.S. 386 at 397.

134.    More specifically, "[d]etermining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  *Graham*, 490 U.S. at 396 (citations and quotation marks omitted).

135.    Buck, Dorn, and Herz actions and use of force, as described in this Complaint, were objectively unreasonable in light of the facts and circumstances confronting them, and therefore violated DeGroat's Fourth Amendment rights.

136.    Buck, Dorn, and Herz actions and use of force, as described in this Complaint, were also malicious and/or involved reckless, callous, and deliberate indifference to DeGroat's federally protected rights.

137.    The force used by Buck, Dorn, and Herz shock the conscience and violated DeGroat's Fourteenth Amendment Rights.  See *Rochin v. California*, 342 U.S. 165, 72 S. Ct. 205, 96 L. Ed. 182 (1952).

138.    Buck, Dorn, and Herz unlawfully seized DeGroat by means of objectively unreasonable, excessive and conscious-shocking physical force, thereby unreasonably restraining DeGroat of her freedoms.

139.    Buck, Dorn, and Herz use of physical force against DeGroat was objectively unreasonably gratuitous, and excessive in light of the facts and circumstances confronting DeGroat in that:

    i.      DeGroat posed no further threat to the situation;

    ii.     DeGroat did not interfere with a lawful arrest, but an unlawful one;

    iii.    DeGroat was not attempting to flee from the police;

    iv.     Buck, Dorn, and Herz assigned their fear of the crowd's reaction to their violence against DeGroat as an excuse to further harm DeGroat;

v.   DeGroat never engaged in criminal behavior in the presence of Buck, Dorn, or Herz as her actions towards Ming were an act of self-defense on behalf of L.S.

vi.   Buck, Dorn, and Herz had no authority nor reason to arrest DeGroat;

vii.   Buck, Dorn, and Herz had no authority no reason to throw DeGroat to the ground;

viii.   Buck, Dorn, and Herz had no authority no reason to throw DeGroat back to the ground after the previously, without authority, threw DeGroat to the ground;

ix.   Herz had no authority nor reason to tase DeGroat.

140.   The force used caused injury to DeGroat including:

i.   Scrapes, bruises, and pain to her right ankle from when DeGroat was tackled to the ground and twisted about by Buck, Dorn, and Herz;

ii.   Scrapes, bruises, and pain to her left knee from when DeGroat was tackled to the ground and twisted about by Buck, Dorn, and Herz;

iii.   Scrapes, bruises, taser marks, and pain to her left rib area from when DeGroat was tased by Herz;

iv.   Persistent headaches from when DeGroat was tackled to the ground and twisted about by Buck, Dorn, and Herz;

v.   Pain to both wrists where DeGroat was handcuffed in an overly tight fashion by either Buck, Dorn, or Herz.

141.    Buck, Dorn, and Herz engaged in the conduct described in this Complaint willfully, maliciously, in bad-faith, and in reckless disregard of DeGroat's federally protected constitutional rights.

142.    The acts or omissions of Buck, Dorn, and Herz, as described in this Complaint, intentionally deprived DeGroat of her constitutional rights and caused her other damages.

143.    Buck, Dorn, and Herz are not entitled to qualified immunity for the complained of conduct.

144.    As a proximate result of Buck, Dorn, and Herz's unlawful conduct, DeGroat has suffered actual physical and emotional injuries, and other damages and losses as described in this Complaint entitling her to compensatory and special damages, in amounts to be determined at trial.

145.    As a further result of Buck, Dorn, and Herz's unlawful conduct, DeGroat has incurred special damages, including medical related expenses and may continue to incur further medical and other special damages, in amounts to be determined at trial.

146.    DeGroat is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interests and costs as allowable by federal law.

147.    Upon information and belief, Buck, Dorn, and Herz will continue in their unlawful conduct, unless and until restrained by this court.

148.    In addition to compensatory, economic, consequential, and special damages, DeGroat is entitled to punitive damages against Buck, Dorn, and Herz under 42 U.S.D.C. § 1983, in that

the actions of Buck, Dorn, and Herz were taken maliciously, willfully, or with a reckless or wanton disregard of the constitutional rights of DeGroat.

## COUNT TWO
### ROSE DeGROAT v. GEORGE DuPAY
### 42 U.S.C. § 1983 – FAILURE TO INTERVENE, EXCESSIVE FORCE

149.    All the allegations of the Complaint are incorporated.

150.    DuPay, knew or should have known, or deliberately ignored that Buck, Dorn, and Herz's treatment against DeGroat was a constitutional violation against DeGroat as Buck tackled DeGroat to the ground while she posed no threat to anyone at the scene and while DeGroat was not interfering with a lawful arrest.

151.    DuPay had reasonable opportunity to intervene and prevent the violation of DeGroat's constitutional rights by Buck, Dorn, and Herz, but failed to act.

152.    DuPay had an affirmative duty to intervene on behalf of DeGroat whose constitutional rights were being violated in the presence of DuPay.

153.    DuPay failed to take any affirmative steps to intervene with Buck, Dorn, and Herz's violations of DeGroat's constitutional rights.

154.    As a result of DuPay's failure to intervene, DeGroat's constitutional rights were violated.

155.    As a result of the foregoing, DeGroat is entitled to compensatory damages in an amount to be determined at trial and is further entitled to punitive damages against Buck, Dorn, and Herz in amount to be determined at trial, plus reasonable attorney's fees, costs, and disbursements of this action.

## RELIEF REQUESTED

WHEREFORE, on the first, second, third, and forth cause of action, and as a result of the foregoing, Plaintiff ROSE DeGROAT prays that this Court enter judgment for Plaintiff and against each of the Defendants and grant:

a. Monetary damages for past and future pain and suffering in an amount to be determined at trial but believed to be not less than five-hundred thousand dollars;

b. Punitive damages against all Defendants;

c. A permanent injunction against Defendants Buck, Dorn, DuPay, and Herz, from engaging use of excessive force and failure to intervene;

d. Attorneys' fees and the costs associated with this action under 42 U.S.C. § 1988, including expert witness fees, on all claims allowed by law;

e. Pre- and post-judgment interest at the lawful rate; and

f. Any further relief that this court deems just and proper.

Edward E. Kopko, Esq.
Edward E. Kopko, Lawyer, P.C.,
Attorney for Plaintiff
308 N. Tioga Street, Second Floor
Ithaca, New York 14850
607.269.1300; Fax 607.269.1301
office@kopko.law

EX. 1- BODY CAMERA
FOOTAGE
(PLACEHOLDER)





Ithaca Police Department
120 East Clinton Street
Ithaca, New York 14850 USA

Pete Tyler, Chief of Police                            Vincent Monticello, Deputy Chief of Police
Police Administration/Records:  607-272-9973    Dennis Nayor, Deputy Chief of Police

# MEDIA RELEASE

| Prepared by:  Sergeant David Amaro | Date Prepared:  April 6, 2019 |
|---|---|
| Type of Incident: Attempted Assault of a Police Officer | |
| Date and Time of Incident: April 6, 2019 at about 1:20 am | |
| Location of Incident: Ithaca Commons | |

| Defendant:  Rose Degroat | Age: 22 | Address:  Ithaca, NY |
|---|---|---|
| Charges:<br>Attempted Assault in the Second Degree, Class E Felony, 2 counts<br>Resisting Arrest, Class A Misdemeanor, 1 count | | |

| Defendant: Cadji Furgeson | Age: 26 | Address:  Ithaca, NY |
|---|---|---|
| Charge:<br>Disorderly Conduct, Violation | | |

| Defendant: ▮▮▮▮▮▮▮▮ | Age: 21 | Address:  Ithaca, NY |
|---|---|---|
| Charge:<br>Disorderly Conduct, Violation | | |

Around 1:20 am on Saturday April 6, 2019, several uniformed Ithaca Police Department Officers were on foot patrol on the Ithaca Commons.  Officers witnessed a male subject, later identified as Cadji Furgeson, run across the commons and strike another male subject in the face, knocking him to the ground.  The officers ran towards the fight and attempted to take Ferguson into custody.  While doing so, a bystander, later identified as Rose Degroat, attacked an officer from behind repeatedly striking him in the head.  Degroat then struck a second officer in the face before being taken into custody.  The first officer experienced headaches and was treated by Bangs Ambulance.  The second officer sustained cuts to his face and declined further treatment. Ferguson was secured in police custody.

The incident caused numerous bystanders, most of whom were uninvolved in the original incident, to attempt various forms of interference in the officers' attempts to make the lawful

**People arrested by the Ithaca Police Department are presumed innocent until proven guilty in a court of law.**

2

DETAILS (continued)

arrests.  Police used discretion in addressing the crowd and only one additional person, later identified as ███████████, was arrested for Disorderly Conduct.  Due to the chaotic scene, the Tompkins County Sheriff's Office responded to the area to provide additional personnel.

Degroat was arraigned the morning of April 6, 2019 in Ithaca City Court on two counts of Attempted Assault in the Second Degree, Class E Felony, for attacking the uniformed Police Officers and one count of Resisting Arrest, Class A Misdemeanor, for interfering with the lawful arrest of Furgeson.  Degroat was released on her own Recognizance and is scheduled to re-appear in Ithaca City Court on April 17, 2019 at 9:00 am.  Furgeson and ████████ were each charged with Disorderly Conduct, a Violation.  Both were released on Appearance Tickets returnable to Ithaca City Court on April 24, 2019 at 9:00 am.



EX. 3                                                                                    001

Case # I19-05149



STATE OF NEW YORK   : COUNTY OF TOMPKINS
CITY COURT          : CITY OF ITHACA
-----------------------------------------------------------

THE PEOPLE OF THE STATE OF NEW YORK                    **FELONY**
              -VS-                              **COMPLAINT**

Defendant:   Rose E. T. de Groat ▮▮▮▮▮▮▮
Address:     ▮▮▮▮▮▮▮▮▮▮▮▮▮

## ACCUSATION

| Be it known that, by this Accusatory Instrument, | | Officer George DuPay |
|---|---|---|
| as the Complainant herein, accuses | Rose E.T. de Groat ▮▮▮▮ | |
| the above named defendant with having committed the offense of | | |
| **Attempted Assault 2nd** | | |

In violation of section 110/120.05, subdivision 03 of the New York State Penal Law.  A class E Felony offense.

## FACTS

On or about the 6thday of April, 2019, at about 01:20 am

While located at 119 E State St, City of Ithaca, County of Tompkins, State of New York a person is guilty of Assault in the second degree when with intent to prevent a peace officer, a police officer, prosecutor as defined in subdivision thirty-one of section 1.20 of the criminal procedure law, registered nurse, licensed practical nurse, public health sanitarian, New York city public health sanitarian, sanitation enforcement agent, New York city sanitation worker, a firefighter, including a firefighter acting as a paramedic or emergency medical technician administering first aid in the course of performance of duty as such firefighter, an emergency medical service paramedic or emergency medical service technician, or medical or related personnel in a hospital emergency department, a city marshal, a school crossing guard appointed pursuant to section two hundred eight-a of the general municipal law, a traffic enforcement officer, traffic enforcement agent or employee of any entity governed by the public service law in the course of performing an essential service, from performing a lawful duty, by means including releasing or failing to control an animal under circumstances evincing the actor's intent that the animal obstruct the lawful activity of such peace officer, police officer, prosecutor as defined in subdivision thirty-one of section 1.20 of the criminal procedure law, registered nurse, licensed practical nurse, public health sanitarian, New York city public health sanitarian, sanitation enforcement agent, New York city sanitation worker, firefighter, paramedic, technician, city marshal, school crossing guard appointed pursuant to section two hundred eight-a of the general municipal law, traffic enforcement officer, traffic enforcement agent or employee of an entity governed by the public service law, he or she causes physical injury to such peace officer, police officer, prosecutor as defined in subdivision thirty-one of section 1.20 of the criminal procedure law, registered nurse, licensed practical nurse, public health sanitarian, New York city public health sanitarian, sanitation enforcement agent, New York city sanitation worker, firefighter, paramedic, technician or medical or related personnel in a hospital emergency department, city marshal, school crossing guard, traffic enforcement officer, traffic enforcement agent or employee of an entity governed by the public service law;

2 1ofe

To Wit: At the aforesaid date, time, and location the defendant did: did knowingly and intentionally punch your deponent, a uniformed police officer, in the back his head and shoulders, while your deponent and Officer G. Herz, another uniformed police officer, were attempting to effect a lawful arrest on Cadji Ferguson (DOB ███████). As a result your deponent sustained a headache from the defendant's actions.

All Contrary to the provisions of the statute in such case made and provided.
The above allegations of fact are are made by the complainant herein:
☒ Upon direct knowledge
☐ Upon information and belief, with the sources of the Complainant's information and the grounds for his belief being:

☐ Wherefore the Complainant prays that a warrant be issued for the arrest of the said defendant.

#734 Officer George DuPay | Complainant

NOTICE
(Penal Law, Section 210.45)
It is a crime, punishable as a Class A misdemeanor under the laws of the State of New York, for a person, in and by a written instrument, to knowingly make a false statement, or to make a statement which such person does not believe to be true.

Affirmed under penalty of perjury this 6 day of April, 2019.

Complainant

Pg 2 of 2

# EX. 4                003



Case # 119-05149

**STATE OF NEW YORK   : COUNTY OF TOMPKINS**
**CITY COURT              : CITY OF ITHACA**
--------------------------------------------------------------------------

**THE PEOPLE OF THE STATE OF NEW YORK**
**-VS-**

**FELONY**
**COMPLAINT**

| Defendant: | **Rose E. T. de Groat** ██████████ |
| Address: | ████████████████ |

## ACCUSATION

| Be it known that, by this Accusatory Instrument, | Officer Benjamin Buck |
|---|---|
| as the Complainant herein, accuses | Rose E.T. de Groat (DOB ██████ |
| the above named defendant with having committed the offense of | |
| **Attempted Assault 2nd** | |
| in violation of section 110/120.05, subdivision 03 of the New York State Penal Law.  A class E Felony offense. | |

## FACTS

| On or about the 6thday of April, 2019, at about 01:20 am |
|---|
| While located at 119 E State St, City of Ithaca, County of Tompkins, State of New York a person is guilty of Assault in the second degree when with intent to prevent a peace officer, a police officer, prosecutor as defined in subdivision thirty-one of section 1.20 of the criminal procedure law, registered nurse, licensed practical nurse, public health sanitarian, New York city public health sanitarian, sanitation enforcement agent, New York city sanitation worker, a firefighter, including a firefighter acting as a paramedic or emergency medical technician administering first aid in the course of performance of duty as such firefighter, an emergency medical service paramedic or emergency medical service technician, or medical or related personnel in a hospital emergency department, a city marshal, a school crossing guard appointed pursuant to section two hundred eight-a of the general municipal law, a traffic enforcement officer, traffic enforcement agent or employee of any entity governed by the public service law in the course of performing an essential service, from performing a lawful duty, by means including releasing or failing to control an animal under circumstances evincing the actor's intent that the animal obstruct the lawful activity of such peace officer, police officer, prosecutor as defined in subdivision thirty-one of section 1.20 of the criminal procedure law, registered nurse, licensed practical nurse, public health sanitarian, New York city public health sanitarian, sanitation enforcement agent, New York city sanitation worker, firefighter, paramedic, technician, city marshal, school crossing guard appointed pursuant to section two hundred eight-a of the general municipal law, traffic enforcement officer, traffic enforcement agent or employee of an entity governed by the public service law, he or she causes physical injury to such peace officer, police officer, prosecutor as defined in subdivision thirty-one of section 1.20 of the criminal procedure law, registered nurse, licensed practical nurse, public health sanitarian, New York city public health sanitarian, sanitation enforcement agent, New York city sanitation worker, firefighter, paramedic, technician or medical or related personnel in a hospital emergency department, city marshal, school crossing guard, traffic enforcement officer, traffic enforcement agent or employee of an entity governed by the public service law; |

Page 1 of 2

To Wit: At the aforesaid date, time, and location the defendant did:  did knowingly and intentionally punch Officer G. Dupay, a uniformed police officer, in the back of his head and shoulders, while he and Officer G. Herz, another uniformed police officer, were attempting to effect a lawful arrest on Cadji Ferguson (DOB [redacted].  Your deponent then attempted to place the defendant under arrest and she attempted to punch your deponent before the defendant dug her fingernails into the left side of your deponents' face.  As a result your deponent began to bleed from the scratch the defendant left.

All Contrary to the provisions of the statute in such case made and provided.
The above allegations of fact are are made by the complainant herein:
☒ Upon direct knowledge
☐ Upon information and belief, with the sources of the Complainant's information and the grounds for his belief being:

☐ Wherefore the Complainant prays that a warrant be issued for the arrest of the said defendant.

| | Officer Benjamin Buck | Complainant |

NOTICE
(Penal Law, Section 210.45)
It is a crime, punishable as a Class A misdemeanor under the laws of the State of New York, for a person, in and by a written instrument, to knowingly make a false statement, or to make a statement which such person does not believe to be true.

Affirmed under penalty of perjury this 6 day of April, 2019.

Complainant

EX. 5



039

040



# EX. 6

007



Matthew Van Houten
District Attorney

**Tompkins County**
**DISTRICT ATTORNEY**
320 North Tioga Street
Ithaca, New York 14850

*"Inclusion Through Diversity"*

Tel: (607) 274-5461
Fax: (607) 274-5429

April 17, 2019

Ithaca City Court
118 East Clinton Street
Ithaca, NY 14850

Re:   Defendant:      **Rose E. Degroat**
      Arrest Date:    **04/06/2019**
      Top Charge:     **§ PL 03120.05 E F Attempted Assault 2-**
                      **W/Intent Cause Inj to Officer/Fireman/EMT/Nurse/Xing Guard**

Dear Judge Miller,

We prefer not to prosecute this case at the felony level.  Accordingly, we ask the Court pursuant to CPL 180.50 to inspect the previously-filed papers to determine if the charge may be reduced to a lesser offense.

We assert that the previously-filed papers provide legally sufficient evidence for the reduced charges of **Obstructing Governmental Administration in the Second Degree** in violation of **Penal Law 195.05.**

We enclose a proposed order by which the Court may reduce the charges.

We enclose a prosecutor's information charging the reduced offenses.  We ask the Court to accept this information for filing and to schedule a prompt arraignment of the defendant on the new charges.

Pursuant to CPL 30.30, we hereby announce our readiness for trial and enclose a formal statement of readiness.

Respectfully submitted,

Andrew Kelly

copy (with encl.) to:

Edward B. Kopko
308 N. Tioga Street, Courthouse Box 70
2nd Floor
Ithaca, NY 14850

Scanned

State of New York
Ithaca City Court

----------------------------------------------------

The People of the State of New York

vs.                                                    **Prosecutor's Information**

Rose E. Degroat

                         Defendant

----------------------------------------------------

Count 1

The District Attorney of Tompkins County accuses the defendant of **Obstructing Governmental Administration in the Second Degree** in violation of **Penal Law 195.05**, committed as follows:

On or about **April 6, 2019**, in the **City of Ithaca**, in Tompkins County, the defendant intentionally obstructed, impaired or perverted the administration of law or other governmental function or prevented or attempted to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act, or by means of interfering, whether or not physical force is involved, with radio, telephone, television or other telecommunications systems owned or operated by the state, or a county, city, town, village, fire district or emergency medical service or by means of releasing a dangerous animal under circumstances evincing the actor's intent that the animal obstruct governmental administration.

Count 2

The District Attorney of Tompkins County accuses the defendant of **Obstructing Governmental Administration in the Second Degree** in violation of **Penal Law 195.05**, committed as follows:

On or about **April 6, 2019**, in the **City of Ithaca**, in Tompkins County, the defendant intentionally obstructed, impaired or perverted the administration of law or other governmental function or prevented or attempted to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act, or by means of interfering, whether or not physical force is involved, with radio, telephone, television or other telecommunications systems owned or operated by the state, or a county, city, town, village, fire district or emergency medical service or by means of releasing a dangerous animal under circumstances evincing the actor's intent that the animal obstruct governmental administration.

Count 3

The District Attorney of Tompkins County accuses the defendant of **Resisting Arrest** in violation of **Penal Law 195.05**, committed as follows:

Scanned

On or about **April 6, 2019**, in the **City of Ithaca**, in Tompkins County, the defendant intentionally prevented or attempted to prevent a police officer or peace officer from effecting an authorized arrest of herself or another person.

Dated:  April 17, 2019

Matthew Van Houten
Tompkins County District Attorney
320 N. Tioga Street
Ithaca, New York  14850

By: Andrew Kelly

Scanned

State of New York
Ithaca City Court
------------------------------------------------
The People of the State of New York

                                         **Order Reducing Charge**
                                         **(CPL 180.50)**

          vs.

**Rose E. Degroat**
                      Defendant
------------------------------------------------

| Crime date: | 04/06/2019 |
|---|---|
| Arrest date: | 04/06/2019 |
| Top charge: | § PL 03120.05 E F Attempted Assault 2-W/Intent Cause Inj to Officer/Fireman/EMT/Nurse/Xing Guard |

Upon the consent of the District Attorney, and upon the papers filed with the Court, and upon the Court's inquiry into the facts of the case as revealed by those papers,

It is hereby DECIDED that the facts alleged in the papers provide legally sufficient evidence to support two non-felony charges of **Obstructing Governmental Administration in the Second Degree** in violation of Penal Law 195.05, and

It is hereby ORDERED pursuant to CPL 180.50 that the Prosecutor's Information submitted by the District Attorney charging the offenses is accepted for filing, and that the defendant shall be prosecuted for those offenses in this Court.

Dated: _____

At:    Ithaca, New York

                                  _____
                                  Hon. Scott A. Miller

Scanned

# EX. 7

State of New York
City Court : City of Ithaca
---------------------------------------------------
The People of the State of New York

           vs.

**Rose E. Degroat**
                Defendant
---------------------------------------------------

**Grand Jury Notice**

D.A. File No. **19-1425A**

TAKE NOTICE pursuant to Criminal Procedure Law 190.50(5) that a Grand Jury proceeding against the defendant is pending or planned for May 30, 2019 at the Grand Jury chamber on the second floor of the Tompkins County Courthouse, 320 N. Tioga Street, Ithaca, NY.

Please also take notice that pursuant to the provisions of 190.50 of the Criminal Procedure Law of the State of New York, the above named defendant, upon notice to the undersigned and upon execution of a waiver of immunity, may appear as a witness before said Grand Jury for the purpose of presenting testimony or other evidence concerning such charge as is appropriate to such proceeding; and

Please take further notice that in the event the said defendant desires to make such an appearance under a waiver of immunity, she should, prior to the date specified above, serve upon the undersigned a written notice requesting the opportunity to appear before said Grand Jury, whereupon the defendant will be notified of the specific time and place for such appearance.

        Please direct any notices, requests, or inquiries to the attention of **District Attorney Matthew Van Houten.**

                Matthew Van Houten
                District Attorney Tompkins County
                320 N. Tioga Street
                Ithaca, NY  14850
                (607) 274-5461

## Proof of Service

I, Christina L. Shutts, understanding that it is punishable as a misdemeanor pursuant to Penal Law 210.45 knowingly to make a false statement herein, state that I served this document upon the defendant by emailing a copy of the same to the defendant's attorney on May 16, 2019 as follows:

Edward Kopko, Esq.
ekopko@ithaca.law

                _Christina L. Shutts_ (signature)
                Christina L. Shutts

Scanned

Defense

# EX. 8

State of New York
County Court : County of Tompkins
-----------------------------------------------------

The People of the State of New York

                                                    Indictment

          vs.

**Rose E. Degroat**

                    Defendant          **2019-0042**

-----------------------------------------------------


Count 1

    The District Attorney accuses the defendant of **Obstructing Governmental Administration in the Second Degree** in violation of Penal Law 195.05, committed as follows:

On or about April 6, 2019, at approximately 1:20 a.m., in Tompkins County, the defendant intentionally obstructed, impaired, or perverted the administration of law or other governmental function or prevented or attempted to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act, or by means of interfering, whether or not physical force is involved, with radio, telephone, television or other telecommunications systems owned or operated by the state, or a county, city, town, village, fire district or emergency medical service.


Count 2

    The District Attorney accuses the defendant of **Attempted Assault in the Second Degree** in violation of Penal Law 110.00 and 120.05(3), committed as follows:

    On or about April 6, 2019, at approximately 1:20 a.m., in Tompkins County, the defendant, with intent to prevent a peace officer, a police officer, registered nurse, licensed practical nurse, sanitation enforcement agent, a firefighter, including a firefighter acting as a paramedic or emergency medical technician administering first aid in the course of performance of duty as such firefighter, an emergency medical service paramedic or emergency medical service technician, or medical or related personnel in a hospital emergency department, a city marshal, a traffic enforcement officer or traffic enforcement agent, from performing a lawful duty, by means including releasing or failing to control an animal under circumstances evincing the actor's intent that the animal obstructs the lawful activity of such peace officer, police officer, registered nurse, licensed practical nurse, sanitation enforcement agent, firefighter, paramedic, technician, city marshal, traffic enforcement officer or traffic enforcement agent, he or she attempts to cause physical injury to such peace officer, police officer, registered nurse, licensed practical nurse, sanitation enforcement agent,

firefighter, paramedic, technician or medical or related personnel in a hospital
emergency department, city marshal, traffic enforcement officer or traffic enforcement agent.

Count 3

The District Attorney accuses the defendant of **Attempted Assault in the Second
Degree** in violation of Penal Law 110.00 and 120.05(3), committed as follows:

On or about April 6, 2019, at approximately 1:20 a.m., in Tompkins County, the
defendant, with intent to prevent a peace officer, a police officer, registered nurse,
licensed practical nurse, sanitation enforcement agent, a firefighter, including a firefighter
acting as a paramedic or emergency medical technician administering first aid in the course of
performance of duty as such firefighter, an emergency medical service paramedic or emergency
medical service technician, or medical or related personnel in a hospital emergency department,
a city marshal, a traffic enforcement officer or traffic enforcement agent, from performing a
lawful duty, by means including releasing or failing to control an animal under circumstances
evincing the actor's intent that the animal obstructs the lawful activity of such peace officer,
police officer, registered nurse, licensed practical nurse, sanitation enforcement
agent, firefighter, paramedic, technician, city marshal, traffic enforcement officer or
traffic enforcement agent, he or she attempts to cause physical injury to such peace officer,
police officer, registered nurse, licensed practical nurse, sanitation enforcement agent,
firefighter, paramedic, technician or medical or related personnel in a hospital
emergency department, city marshal, traffic enforcement officer or traffic enforcement agent.

Count 4

The District Attorney accuses the defendant of **Resisting Arrest** in violation of Penal
Law 205.30, committed as follows:

On or about April 6, 2019, at approximately 1:20 a.m., in Tompkins County, the
defendant intentionally prevented or attempted to prevent a police officer or peace officer from
effecting an authorized arrest of himself or another person.

Dated:  June 6, 2019

Jackie Creque
Grand Jury Foreperson

Matthew Van Houten
District Attorney

# EX. 9

STATE OF NEW YORK

COUNTY COURT : COUNTY OF TOMPKINS

-------------------------------------------------------------

PEOPLE OF THE STATE OF NEW YORK,

|  |  |  |
|---|---|---|
| | Plaintiff, | DECISION and ORDER |
| vs. | | Ind. No. 2019-0042 |

ROSE E. DEGROAT,

                    Defendant.

-------------------------------------------------------------

Defendant Rose DeGroat is charged by indictment with Attempted Assault in the 2nd Degree (2 counts), Obstructing Governmental Administration in the 2nd Degree, and Resisting Arrest. By Notice of Motion filed August 26, 2019, defendant, through her attorneys, Edward Kopko and Jerome Mayersak, seek dismissal of the indictment in furtherance of justice pursuant to Criminal Procedure Law §210.40. By Response dated September 9, 2019, the People, by Deputy District Attorney Andrew Bonavia, consent to dismissal of both Attempted Assault 2nd charges but oppose dismissal of the remaining two misdemeanor charges.

<u>Dismissal in Furtherance of Justice</u>

Criminal Procedure Law section 210.40 states, in relevant part:

1. An indictment or any count thereof may be dismissed in furtherance of justice… when, even though there may be no basis for dismissal as a matter of law …such dismissal is required as a matter of judicial discretion by the existence of some compelling factor, consideration or circumstance clearly demonstrating that conviction or prosecution of the defendant upon such indictment or count would constitute or result in injustice.

1

"A court is authorized to dismiss criminal charges in the interest of justice if, upon considering the criteria set forth in CPL 210.40 and balancing the interest of the individual against those of the public, it concludes that the reasons favoring dismissal are both real and compelling" (People v Kennard, 266 A.D.2d 718, 719 lv. denied 94 N.Y.2d 864 [3rd dept. 1999]). Upon the analysis set forth below, it is clear that genuine and compelling reasons support dismissal of the charges.

The court makes the following findings based on the record before it, including multiple video recordings of the incident that led to these charges, as required under CPL §210.40 (1) (a-j).

In the early morning hours of April 6, 2019, two men, Cadji Ferguson and Joseph Ming, began arguing and scuffling with each other on the Ithaca Commons. Although other people were present and may have been involved, it is impossible to tell from the videos what role they may have played. The reason for the dispute is not known to the Court. At one point, Mr. Ming can be seen roughly pushing Mr. Ferguson away from himself. Mr. Ferguson then took off his jacket and charged Mr. Ming, knocking him to the ground. Mr. Ming immediately got up, apparently uninjured.

Four Ithaca Police officers were nearby and several witnessed Mr. Ferguson push Mr. Ming down. As a group, they rushed to apprehend Mr. Ferguson with Officer Herz in the lead. Officer Herz testified before the Grand Jury that he made the decision to use his taser on Mr. Ferguson before he reached him for two reasons. First, he said he made eye contact with Mr. Ferguson, a man he described as a "small, younger guy", and concluded that he was about to run from the police. Second, "he had already used force against someone else – I had no idea the condition, the guy could have been unconscious for all I knew." As he approached Mr. Ferguson, Officer Herz recalled ordering him to "Get down on the ground. Get down on the ground." Per Officer Herz, Mr. Ferguson did not comply but tried to get away by going behind other people in the crowd. As another officer grabbed Mr. Ferguson, Officer Herz fell to the ground, having unknowingly been tripped by a

2

fellow officer. He testified that when he looked up he saw other officers trying unsuccessfully to physically restrain Mr. Ferguson. Having a clear line of sight to Mr. Ferguson's back, Officer Herz deployed his taser. "He went down just as picture perfect as we are trained and I immediately went towards him and tried to help take him into custody."

The video evidence contradicts parts of Officer Herz's account. While Mr. Ferguson did push Mr. Ming to the ground, Mr. Ming stood up within seconds in clear view of the police and well before any of the officers arrived at the scene. As the officers approached, Mr. Ming and Mr. Ferguson were essentially squaring off with each other like a couple of boxers. Neither appeared to have a weapon. As the police officers arrived, Mr. Ferguson turned away from them and took a couple of steps before he was forcefully grabbed and pushed toward the ground by the police. There was no time for Mr. Ferguson to hear, understand, or respond to the command that he get on the ground. As two officers sought to physically restrain him, Mr. Ferguson suddenly dropped straight to the ground, paralyzed by the taser. Mr. Ferguson was unarmed and was not fighting with the officers when he was tasered. He is clearly visible in a video with one arm free while an officer twisted him around by his other arm.

Ms. DeGroat is visible in the videos apparently attempting to calm Mr. Ferguson when the police descended on him. She was moving toward Mr. Ferguson as he was pushed by the police when he suddenly collapsed. An officer immediately got on top of Mr. Ferguson to handcuff him. As Ms. DeGroat threw herself into the melee in defense of Mr. Ferguson, three officers went after her and forcibly took her to the pavement face first. Ms. DeGroat is seen struggling with the officers as they subdued and handcuffed her.

(a) the seriousness and circumstances of the offense;

Upon the dismissal of the Attempted Assault 2nd charges, defendant remains charged with Obstructing Governmental Administration and Resisting Arrest, both Class

"A" misdemeanors in New York State, punishable by up to one year of incarceration. Defendant appears to have been an interested bystander to a fight between her friend and Mr. Ming. She is charged for her actions in response to the aggressively forceful manner by which the police subdued Mr. Ferguson.

Ms. DeGroat witnessed the police charge toward her friend, forcibly grab him and inexplicably taser him. She saw him collapse to the ground, unable to move. As soon as Mr. Ferguson was down, a police officer jumped on top of him. In the Court's view, Ms. DeGroat reacted instinctively to protect Mr. Ferguson in this fast moving and bewildering situation. If not for the regrettable actions of the police, she likely would not have intervened. When officers sought to restrain her, she forcefully struggled against them. Ultimately three officers were involved in forcing her to the ground face down.

(b) the extent of harm caused by the offense;

Ithaca Police Officer Benjamin Buck received several scratches to the face during the melee. He did not require medical attention nor miss any time from work. Another officer complained of a headache.

(c) the evidence of guilt, whether admissible or inadmissible at trial;

There is substantial evidence that defendant sought to interfere with the arrest of Mr. Ferguson and to prevent her own arrest.

(d) the history, character and condition of the defendant;

Ms. DeGroat is a lifetime Ithaca resident with no prior criminal history.

(e) any exceptionally serious misconduct of law enforcement personnel in the investigation, arrest and prosecution of the defendant;

4

Upon careful review of the videotapes, the Court concludes that the Ithaca Police Officers overreacted to the initial situation. Although they did see Mr. Ferguson push Mr. Ming down, both men were on their feet and facing each other when the police rushed in to detain Mr. Ferguson. The police made no effort to defuse the situation or to simply separate the men while the conflict was sorted out. They rushed Mr. Ferguson and very aggressively tried to force him to the pavement when he was tasered in the back. Officer Herz was not justified in using a taser on Mr. Ferguson. His claim that Mr. Ferguson might have knocked Mr. Ming unconscious was clearly not true; his claim that he could tell Mr. Ferguson was getting ready to run is doubtful; and it is not accurate to characterize Mr. Ferguson's actions as resisting arrest.

(f) the purpose and effect of imposing upon the defendant a sentence authorized for the offense;

If defendant were convicted of either crime, the only purpose of a sentence would be punishment. There is no indication that she is in need of rehabilitation or supervision. The facts of this situation were unique and not indicative of any tendency toward unlawful behavior.

(g) the impact of a dismissal upon the confidence of the public in the criminal justice system;

This factor is difficult to assess. It is likely that some members of the public will disagree with a dismissal and support the police conduct. It is clear that others will see a dismissal as a just result.

The prosecuting attorney has demonstrated ambivalence about the case. After initially reducing the charges to a misdemeanor level, he sought and obtained felony charges through Grand Jury indictment. He subsequently proposed to resolve the entire case against defendant with a plea to a disorderly conduct violation, an offer rejected by defendant.

5

(h) the impact of a dismissal on the safety or welfare of the community;

The Court sees no negative impact on the safety or welfare of the community based upon this dismissal.

(i) where the court deems it appropriate, the attitude of the complainant or victim with respect to the motion;

It is highly likely that the officers involved oppose this dismissal.

(j) any other relevant fact indicating that a judgment of conviction would serve no useful purpose.

None.

Conclusion

Based upon the foregoing analyses, the court finds the Defendant's motion is granted. There are exceptional circumstances present here that warrant the relief sought.

This constitutes the Judgment and Order of the Court entered upon notice to all parties.

ENTER

Dated: September 27, 2019

_____

JOHN C. ROWLEY

TOMPKINS COUNTY JUDGE

6

EX. 10



# Judge dismisses charges against Rose DeGroat

by **Kelsey O'Connor**
September 27, 2019



Demonstration in front of Tompkins County Courthouse on Friday September 20, 2019.

ITHACA, N.Y. — Judge John Rowley has dismissed all charges against Rose DeGroat, who was facing two counts of felony second-degree attempted assault and two misdemeanors in connection with an altercation that took place on the Ithaca Commons in April.



The case has garnered significant public attention and outcry, with continuous protests and rallies. Members of the community have



Rose DeGroat speaks at a demonstration in front of
Tompkins County Courthouse on Friday September 20, 2019.
(Jacob Mroczek/The Ithaca Voice)

packed every court appearance for DeGroat, no matter how small, and for Cadji Ferguson, whose charges were also recently dismissed.

• **Related: Cadji Ferguson found not guilty of disorderly conduct in Commons case**

In response to an omnibus motion filed by attorneys Edward Kopko and Jerome Mayersak, Judge John Rowley dismissed DeGroat's indictment Friday morning.

On Friday, Kopko said his reaction is "bittersweet," as he said he believes charges should not have been brought in the first place. He credited the public's strong response over the past five months to helping get the charges dropped.

"Frankly, the community outrage about this led to this good result," Kopko said. "This is the type of community that we want to live in."

The Ithaca Police Department initially charged DeGroat with two counts of second-degree attempted assault and obstructing governmental administration. As a result of the incident, as noted in the order, one officer reported receiving several scratches on his face but did not require medical attention. The other reported having a headache.

Here is an excerpt describing the events, as outlined in Rowley's order, that led up to the arrests of DeGroat and Ferguson:

In the early morning hours of April 6, 2019, two men, Cadji Ferguson and Joseph Ming, began arguing and scuffling with each other on the Ithaca Commons. Although other people were present and may have been involved, it is impossible to tell from the videos what role they may have played. The reason for the dispute is not known to the Court. At one point, Mr. Ming can be seen roughly pushing Mr. Ferguson away from himself. Mr. Ferguson then took off his jacket and charged Mr. Ming, knocking him to the ground. Mr. Ming immediately got up, apparently uninjured.

Four Ithaca Police officers were nearby and several witnessed Mr. Ferguson push Mr. Ming down. As a group, they rushed to apprehend Mr. Ferguson with Officer Herz in the lead. Officer Herz testified before the Grand Jury that he made the decision to use his taser on Mr. Ferguson before he reached him for two reasons. First, he said he made eye contact with Mr. Ferguson, a man he described as a "small, younger guy", and concluded that he was about to run from the police. Second, "he had already used force against someone else – I had no idea the condition, the guy could have been unconscious for all I knew." As he approached Mr. Ferguson, Officer Herz recalled ordering him to "Get down on the ground. Get down on the ground." Per Officer Herz, Mr. Ferguson did not comply but tried to get away by going behind other people in the crowd. As another officer grabbed Mr. Ferguson, Officer Herz fell to the ground, having unknowingly been tripped by a fellow officer. He testified that when he looked up he saw other officers trying unsuccessfully to physically restrain Mr. Ferguson. Having a clear line of sight to Mr. Ferguson's back, Officer Herz deployed his taser. "He went down just as picture

perfect as we are trained and I immediately went towards him and tried to help take him into custody."

The video evidence contradicts parts of Officer Herz's account. While Mr. Ferguson did push Mr. Ming to the ground, Mr. Ming stood up within seconds in clear view of the police and well before any of the officers arrived at the scene. As the officers approached, Mr. Ming and Mr. Ferguson were essentially squaring off with each other like a couple of boxers. Neither appeared to have a weapon. As the police officers arrived, Mr. Ferguson turned away from them and took a couple of steps before he was forcefully grabbed and pushed toward the ground by the police. There was no time for Mr. Ferguson to hear, understand, or respond to the command that he get on the ground. As two officers sought to physically restrain him, Mr. Ferguson suddenly dropped straight to the ground, paralyzed by the taser. Mr. Ferguson was unarmed and was not fighting with the officers when he was tasered. He is clearly visible in a video with one arm free while an officer twisted him around by his other arm.

Ms. DeGroat is visible in the videos apparently attempting to calm Mr. Ferguson when the police descended on him. She was moving toward Mr. Ferguson as he was pushed by the police when he suddenly collapsed. An officer immediately got on top of Mr. Ferguson to handcuff him. As Ms. DeGroat threw herself into the melee in defense of Mr. Ferguson, three officers went after her and forcibly took her to the pavement face first. Ms. DeGroat is seen struggling with the officers as they subdued and handcuffed her.

DeGroat's case has taken a few turns in the past several months. In May, **District Attorney Matthew Van Houten agreed to reduce DeGroat's**

**charges after reviewing the video**. However, **the felony charges resurfaced in June after the case was brought to a grand jury**.

In the order, Rowley said "in the Court's view," DeGroat "reacted instinctively to protect Mr. Ferguson in this fast moving and bewildering situation. If not for the regrettable actions of the police, she likely would not have intervened. When officers sought to restrain her, she forcefully struggled against them. Ultimately three officers were involved in forcing her to the ground face down."

He said further that the court concluded the police officers overreacted to the initial situation and "made no effort to defuse the situation."

The order notes that the district attorney's office had consented to dismissing the felony-level charges, but opposed dismissing the misdemeanors. The order published Friday dismisses all charges.

DeGroat's trial was previously planned for November. Over the course of five months, there have been several rallies and protests putting pressure on District Attorney Matthew Van Houten to drop the charges. On Friday, the pressure continued as more than 100 people gathered outside the Tompkins County Courthouse. In addition to the charges being dropped, protesters have called for the City of Ithaca to hold police accountable. The demonstration last week moved to Tioga Street, where protesters laid in the street and others drew chalk outlines around them.

• **Related: Protesters occupy entrance to Tompkins Courthouse, demand charges against Rose DeGroat dropped**

In previous statements to The Ithaca Voice, Ithaca Police Chief Dennis Nayor has said officers that night acted in accordance with the law, but added that he is nevertheless working to **strengthen the department's connection with the community**. Nayor did not respond immediately to a request for comment Friday following Rowley's order.



Demonstration in front of Tompkins County Courthouse on Friday September 20, 2019. (Jacob Mroczek/The Ithaca Voice)



Student protesters at the Demonstration for Rose on Friday September 20, 2019. (Jacob Mroczek/The Ithaca Voice)

Rowley said Friday he had no further comment outside the order.

Van Houten did not respond to a request for comment Friday but said there would be a news conference at a later date. This story will be updated if Nayor or Van Houten respond with comments.

Read the decision and order below. You can read the original omnibus motion **filed in August 2019 here**.

**Read the Decision and Order, Sept. 27, 2019**

**DeGroat Rose Interest of Ju...** by **Kelsey O'Connor** on Scribd

STATE OF NEW YORK

COUNTY COURT : COUNTY OF TOMPKINS

-------------------------------------------------------------

PEOPLE OF THE STATE OF NEW YORK,

                              Plaintiff,                    DECISION and OR

                    vs.                                     Ind. No. 2019-0042

ROSE E. DEGROAT,

                              Defendant.

-------------------------------------------------------------

        Defendant Rose DeGroat is charged by indictment with Attempted Ass

Degree (2 counts), Obstructing Governmental Administration in the 2nd Degree

Resisting Arrest. By Notice of Motion filed August 26, 2019, defendant, throu

attorneys, Edward Kopko and Jerome Mayersak, seek dismissal of the indictm

furtherance of justice pursuant to Criminal Procedure Law §210.40. By Respor

September 9, 2019, the People, by Deputy District Attorney Andrew Bonavia,

dismissal of both Attempted Assault 2nd charges but oppose dismissal of the rer



misdemeanor charges.

| 1 | of 6 |

**Related Coverage:**

- **Woman in Commons case pleads not guilty after felony indictment**
- **Cadji Ferguson found not guilty of disorderly conduct in Commons case**
- **Legal cases continue for two charged in April Ithaca Commons incident**
- **Black Lives Matter Ithaca condemns police brutality and racism at local rally**
- **City releases police body camera footage of Ithaca Commons incident**
- **Charges reduced for woman charged in Commons case**
- **Prosecution of woman charged in Commons incident 'totally unwarranted,' attorney argues**
- **Three charged in 'chaotic' Ithaca Commons scuffle with police officers**

*Featured image: Demonstration in front of Tompkins County Courthouse on Friday, Sept. 20, 2019. (Jacob Mroczek/The Ithaca Voice)*



## KELSEY O'CONNOR

Kelsey O'Connor is the managing editor for the Ithaca Voice. Questions? Story tips? Contact her at koconnor@ithacavoice.com and follow her on Twitter @bykelseyoconnor. More by Kelsey O'Connor

© 2021 Always free. Always local. .

Proudly powered by Newspack by Automattic